Constance SNOWDEN

v.

**D. C. TRANSIT SYSTEM, INC.,**
Appellant,

and

James L. Ivey.

No. 24494.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 26, 1971.

Decided Dec. 10, 1971.

Petition for Rehearing Denied
Jan. 20, 1972.

Mr. David L. Hilton, Washington, D. C., for appellant.

Mr. Paul H. Weinstein, Washington, D. C., with whom Messrs. M. Michael Cramer and Laurence Levitan, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and TAMM and ROBB, Circuit Judges.

TAMM, Circuit Judge:

Appellant, Constance Snowden, a passenger for hire on a bus owned by appellee, D.C. Transit System, Inc., sustained personal injuries when the bus collided with an automobile owned and operated by James Ivey.[1] Mrs. Snowden filed suit against both D.C. Transit and Ivey who in turn filed cross-claims against each other for contribution. During the course of the trial, at a bench conference, counsel for Snowden

1. Ivey is not a party to this appeal.

and counsel for Ivey jointly announced that their respective clients had entered into a settlement agreement.[2] Since the jury was not informed of the settlement,[3] the trial continued, ostensibly against both defendants. At the conclusion of the trial the jury was instructed as to Mrs. Snowden's suit against both defendants. The jury returned a verdict for Mrs. Snowden against D.C. Transit in the amount of $12,500 and exonerated Ivey from liability to Mrs. Snowden and D.C. Transit. Following entry of judgment, D.C. Transit filed a motion to reduce its judgment liability to plaintiff by $5,000—the amount of the settlement between Ivey and Snowden—from $12,500 to $7,500. The motion was denied.[4] We reverse.

■ A cardinal principle of law is that in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered. "[W]hen the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages." Lovejoy v. Murray, 70 U.S.(3 Wall.) 1, 17, 18 L.Ed. 129 (1865). The purpose of the rule—prevention of unjust enrichment—has been invoked by this court on several occasions. In McKenna v. Austin, 77 U.S. App.D.C. 228, 233, 134 F.2d 659, 664 (1943) we observed that an "injured person may [not] have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm because several share in causing it." *See also* Brightheart v. McKay, 136 U.S.App.D.C. 400, 401, 420 F.2d 242, 243 (1969) *citing* Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962); Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344 (1954). The jury has determined that the full extent of Mrs. Snowden's injuries is $12,500. She can recover no more.

Apparently, appellee contends that the settlement payment should not fall within the general rule cited above since is, in effect, a gratuity from a collateral source which does not operate to reduce the amount of the judgment.[5] Indeed a minority of jurisdictions have so held. Carruba v. Speno, 418 S.W.2d 398 (Ky.

---

2. Although not stated in the record below, it was agreed by counsel at oral argument that the amount of the settlement was $5,000.

3. In Martello v. Hawley, 112 U.S.App.D.C. 129, 132, 300 F.2d 721, 724 (1962), we stated that the jury should not be informed of the fact or the amount of any settlement since it only tends to mislead the jury.

4. The District Judge treated the motion to reduce judgment liability as a Rule 59(e) motion to amend judgment which must be served within ten days after entry of judgment. Since the motion was served sixteen days after entry of judgment the District Judge ruled that he had no jurisdiction to entertain the untimely motion.

Although the motion was handled as a Rule 59(e) motion, it was not denominated as such. In our view the motion should have been treated as a Rule 60(b)(5) motion which was made within a reasonable time. *See* District of Columbia v. Stackhouse, 99 U.S.App.D.C. 242, 239 F.2d 62 (1956).

5. The collateral source rule is found in the Restatement of Torts § 920(e):

*Benefits received from third persons.* The rule stated in this Section does not apply where, although a benefit is received because of the harm, such benefit is the result of the forethought of the plaintiff or of a gift to him by a third person. The plaintiff is not barred from recovery merely because he suffers no net loss from the injury, as where he is insured or where friends make contributions to him because of the loss. If his things are tortiously destroyed, the insurance carrier is subrogated to his position. In other cases the damages which he is entitled to recover are not diminished by the fact that, either as a matter of a contract right or because of gifts, the transaction results in no loss to him. Where a person has been disabled and hence cannot work but derives an income during the period of disability from a contract of insurance or from a contract of employment which requires payment during such period, his income is not the result of earnings but of previous contractual arrangements made for his own benefit, not the tortfeasor's. Likewise, the damages for loss of earnings

1967); Papenfus v. Shell Oil Co., 254 Wis. 233, 35 N.W.2d 920 (1949).

We find these cases unpersuasive. A settlement made by one liable potentially, but not in fact, is made under Damoclean pressure, not gratuitously. The collateral source rule which applies to gratuitous or pre-planned benefits such as insurance and sick pay cannot be tortured to encompass the settlement made herein. *See* Bryant v. Mathis, 107 U.S. App.D.C. 339, 278 F.2d 19 (1960); Hudson v. Lazarus, *supra.* Other courts when faced with the precise facts at bar have so held. Gill v. United States, 429 F.2d 1072, 1078–1079 (5th Cir. 1970) *citing* McMullen v. Coleman, 135 S.W.2d 776 (Tex.Civ.App.1940); Riexinger v. Ashton Co., 9 Ariz.App. 406, 453 P.2d 235 (1969); Steger v. Egyud, 219 Md. 331, 149 A.2d 762 (1959); Klotz v. Lee, 36 N.J.Super. 6, 114 A.2d 746 (1955); Jacobsen v. Woerner, 149 Kan. 598, 89 P.2d 24 (1939). *See also* Sweep v. Lear Jet Corp., 412 F.2d 457, 461 (5th Cir. 1969); W. Prosser, Law of Torts § 50, p. 305 (4th ed. 1971).

█ Although considerably obfuscated by the extraordinary factual situations which inevitably arise in joint tortfeasor litigation, a glance at our own decisions reveals that we have recognized the principal of credit where there has been no exoneration of the settling tortfeasor. *See* McKenna v. Austin, *supra*, 77 U.S.App.D.C. at 234, 134 F.2d at 665. We now hold that a settlement with one later proven not to have been a tortfeasor also requires a reduction in the judgment against the tortfeasor. Our holding achieves a salutory result in that it precludes potential chicanery on the part of plaintiffs in similar circumstances. Were we to hold otherwise a plaintiff would be in the anomalous position of benefiting by losing at trial to tortfeasors with whom he has settled.

The main thrust of appellee's contentions in its brief and at oral argument is that our cases barring *contribution* where there is no finding of joint liability in tort preclude a *credit* where liability is not joint. The flaw in appellee's argument is her failure to distinguish between the concepts of credit and contribution. Under the circumstances of this case it would obviously be unfair to force Ivey, the settling tortfeasor, to contribute since he has already bought his peace. Jones v. Schramm, 141 U. S.App.D.C. 169, 436 F.2d 899 (1970); McKenna v. Austin, *supra.* However, unlike the concept of contribution no unfairness results from a credit. The settling tortfeasor is not forced to make any additional payment. Furthermore, and just as importantly, plaintiff-appellee is getting full satisfaction for her injuries.

The judgment appealed from is reversed and the cause remanded with instructions to reduce the judgment liability of appellant D.C. Transit by the $5,000 paid in settlement.[6]

So ordered.

are not diminished by the fact that his employer or a third person makes gifts to him even though these have been given because of his incapacity. Further, he may be able to recover for the reasonable value of medical treatment or other services made necessary by the injury although these have been donated to him.

6. Two of our cases would seem to indicate that D.C. Transit need only pay one-half the original verdict—i. e:, $6,250. However, these cases have no application to the instant facts.

In Martello v. Hawley, *supra*, note 3, the jury determined that both defendants were liable, therefore a formula requiring defendant Martello to pay more than half the verdict would have deprived him of his right to contribution from the other defendant. In the instant case defendant Ivey was exonerated.

In Otis v. Thomas, 104 U.S.App.D.C. 343, 262 F.2d 232 (1958), the amount of the verdict was for less than twice the amount of the settlement, therefore establishing credit at one-half the amount of the verdict did not result in causing the plaintiffs to receive less than full compensation for damages. Since the verdict in the instant case was in excess of twice the amount of the settlement, establishing credit at one-half the verdict would limit Mrs. Snowden's recovery to less than the full measure of her damages.