**George W. ROSE, Jr., an infant by and through his father and next friend, George W. Rose**
**and**
**George W. Rose, Plaintiffs,**

**v.**

**Arcadius H. HAKIM et al., Defendants.**

**Civ. A. No. 2132–68.**

United States District Court,
District of Columbia.

July 24, 1972.

J. Joseph Barse, Washington, D. C., for plaintiffs.

Denver H. Graham, Washington, D. C., for Arcadius H. Hakim.

J. Harry Welch, Washington, D. C., for Associated Anesthesiologists.

John L. Laskey, Diane M. Sullivan, Washington, D. C., for Washington Hospital Center.

## OPINION

JONES, District Judge.

On November 10, 1971, this Court filed herein its opinion (335 F.Supp. 1221) and on the same day entered an order effectuating the findings and conclusions set forth in the opinion. On November 19, 1971, there was entered herein a judgment on the jury verdict returned on February 19, 1971.[1] The jury verdict was against the defendant Washington Hospital Center (Hospital) in favor of George W. Rose, Jr. (infant plaintiff) in the sum of $265,000.00 and in favor of George W. Rose, Sr. (father plaintiff) in the sum of $29,777.25.

Following the entry of the judgment on the verdict, Hospital filed a motion (1) for judgment notwithstanding the verdict, (2) for a reduction of the judgment by crediting the amounts paid in settlement by the other defendants, or alternatively for a reduction of the judgment by two-thirds of the amount, (3) for reform of the verdict and judgment to eliminate therefrom the unpaid portion of the Hospital's bill recovered in full by father plaintiff, and (4) for a new trial. On December 7, 1971, that motion was denied by the Court. Thereafter, on January 5, 1972, Hospital filed its notice of appeal from the judgment on the verdict in favor of the plaintiffs and from the order denying its motion.[2]

In the United States Court of Appeals for the District of Columbia Circuit, Hospital filed a motion for summary reversal and remand to this Court for reconsideration of Hospital's motion for credit of settlement payments against the judgment and for additional credit reflecting the exclusion of an unpaid item of expense in the calculation of a judgment in favor of father plaintiff for medical costs. The Court of Appeals granted Hospital's motion for summary reversal and has remanded the record to this Court for reconsideration of its December 7, 1971 order denying credit on the judgment of the amount paid in settlement by defendant Hakim and defend-

---

1. As the judgment on the verdict and the Court's opinion (335 F.Supp. 1221) make clear, plaintiffs' case against the defendant Washington Hospital Center was tried by the Court and jury, while the several cross-claims were tried by the Court without the jury. After trial the Court took the cross-claims under advisement and following briefing by the parties the November 10, 1971 Opinion was filed and order entered.

2. On December 9, 1971, defendant Arcadius Hakim (Hakim) and the defendant physicians practicing medicine in partnership as anesthesiologists (Associated Anesthesiologists) filed their notice of appeal from the November 10, 1971 order dismissing their cross-claims. On January 7, 1972, plaintiffs filed a notice of cross-appeal from the November 17, 1971 judgment on the jury verdict allowing plaintiffs interest from that date on that judgment instead of interest from February 19, 1971, the date the jury returned its verdict.

ants Associated Anesthesiologists and denying credit of the sum of $7,964.70 on the amount the jury awarded father plaintiff for medical costs. The Court of Appeals directed that such reconsideration be made in light of that Court's December 10, 1971 Opinion in Snowden v. D. C. Transit System, Inc., D.C.Cir., 454 F.2d 1047.

In *Snowden* the plaintiff was injured while she was a revenue paying passenger on a bus owned and operated by defendant D. C. Transit System, Inc. (Transit). Her injuries resulted from a collision between the bus and an automobile owned and operated by defendant Ivey. She sued both Transit and Ivey and they in turn filed cross-claims against each other for contribution. The action went to trial before the court and a jury. During the course of the trial, counsel for plaintiff and counsel for Ivey announced to the court that plaintiff and Ivey had entered into a settlement agreement. By the terms of that settlement Ivey paid plaintiff $5,000.00. The jury was not made aware of either the settlement or its amount and the trial continued as though Ivey was actually a party. At the conclusion of the trial the jury returned a verdict in favor of the plaintiff against Transit in the amount of $12,500.00. At the same time the jury exonerated Ivey from liability to plaintiff and Transit. Following the entry of judgment, Transit filed a motion to reduce its judgment liability to plaintiff by $5,000.00—the amount of the settlement between plaintiff and Ivey—from $12,500.00 to $7,500.00. The trial court denied the motion. On appeal the Court of Appeals reversed and instructed the trial court to reduce the judgment liability of Transit by $5,000.00 paid in settlement.

Hospital argues that *Snowden* requires this Court to reduce its judgment liability to the plaintiffs by the sum of $270,000.00 paid in settlement by Hakim and Associated Anesthesiologists.[3] In other words, Hospital asserts it should have credited against its judgment liability of $294,777.25 the sum of $270,000.00; that is, it should only have to pay the plaintiffs $24,777.25 in satisfaction of its judgment liability.[4]

Plaintiffs challenge Hospital's interpretation of *Snowden*.[5] That case, they assert, differs from theirs in that in *Snowden* there was only "a single injury" while here the "singleness of injury" does not exist. The plaintiffs seek to support that proposition by referring to their pleadings, their November 30, 1970 trial brief, the December 10, 1970 pretrial and this Court's findings of fact as set forth in its November 10, 1971 opinion.

Hospital, in responding, asserts that plaintiffs' pleadings, the May 19, 1970 pre-trial order and plaintiffs' settlement agreements with Hakim and Associated Anesthesiologists all evidence that plaintiffs' claimed injury was infant plaintiff's permanent brain damage and that all defendants were charged with causing it.

Plaintiffs' complaint against Hakim and Associated Anesthesiologists alleged that these defendants through the acts of negligence charged caused infant plaintiff to become "comatose and caused [him] to suffer massive, irreparable, and possibly irreversible and permanent brain damage which has and will render him defective, blind, and crippled

3. The original opinion of this Court (335 F.Supp. 1221) treats at some length with those settlements.

4. Since the settlement with the father plaintiff was in the sum of $30,000.00 while the verdict in his favor was for $29,777.25, Hospital would pay him nothing. The verdict in favor of the infant plaintiff was in the amount of $265,000.00 while he was paid $240,000.00 in settlement. Thus the Hospital would have to pay the infant plaintiff $25,000.00.

5. Plaintiffs and Hospital on this remand submit on their respective written arguments in the Court of Appeals in support of and in opposition to Hospital's motion for summary reversal.

for the balance of his life." And that infant plaintiff "has further been caused to suffer great mental and physical pain and anguish and will continue to suffer such pain and anguish permanently for the balance of his life." (¶ 12, Complaint.) Subsequent to the filing of their original complaint, they filed an amended complaint stating their claim against Hospital. After charging certain acts of negligence against Hospital, they asserted the resulting injury to infant plaintiff in exactly the same language as they used in their complaint against Hakim and Associated Anesthesiologists with one exception. In their complaint they conditioned the "irreversible and permanent brain damage" by using the word "possibly." The amended complaint did not so condition the brain damage. (¶ 21, Amended Complaint.) The father plaintiff's claimed injury was the same both in the complaint and the amended complaint in that in both he claimed that he had been and would be deprived of his son's services and that he had and would in the future incur medical and other care and treatment expenses due to infant plaintiff's brain damage. (¶ 13, Complaint; ¶ 22, Amended Complaint.)

Plaintiffs at the May 10, 1970 pre-trial conference stated that "the claimed injuries" sustained by infant plaintiff were: "1. Generalized brain damage. 2. Cortical blindness. 3. Quadriplegia. 4. Mental and physical pain and suffering." In their pre-trial statement they did not distinguish between any of the defendants and those "claimed injuries."

On October 9, 1970, before this case came on for trial plaintiffs entered into separate settlement agreements with Hakim and with Associated Anesthesiologists. In each agreement the plaintiffs accepted the amount paid "in partial satisfaction of the injuries and damages claimed to have been suffered" by plaintiffs with express reservation of rights of actions against all other persons.

The Court approved those settlement agreements on October 9, 1970. Subsequent to those settlement agreements, a further pre-trial conference was held on December 10, 1970, but there was no change in the injuries claimed by plaintiffs as they asserted them in their pleadings and at the May 10, 1970 pre-trial.[6]

From the foregoing examination of the pleadings, pre-trial conference of May 10, 1970, and plaintiffs' October 9, 1970 settlement, it was apparent that from the beginning the single injury claimed by plaintiffs was the brain damage to infant plaintiff and the results thereof, that is, cortical blindness, quadriplegia, mental and physical pain and suffering, and incurred and to be incurred expenses and monetary loss. The fact that plaintiffs changed their tactics after the October 1970 settlements and briefed and tried their case against the Hospital only on that defendant's negligent acts and omissions in the intensive care unit does not alter the single injury claimed. That trial to the jury proceeded on the theory that that injury was caused by those acts and omissions.

Nor do the findings of this Court on the cross-claims that the Hospital alone was at fault alter the singleness of injury claim. Those findings parallel the jury verdict in *Snowden*. There the jury exonerated defendant Ivey from liability to the plaintiff while finding Transit solely liable for the collision. Here this Court exonerated Hakim and Associated Anesthesiologists while the jury found Hospital liable.

Plaintiffs also contend that Hospital's claim for credit on the judgment is in effect an assertion of the defense of set-off and, since Hospital neither pleaded nor offered proof in support of that defense, it is not entitled to the credit claimed. For that proposition plaintiffs cite two authorities, Kansas City Southern Ry. Co. v. McDaniel, (Cir. 8, 1942),

6. There had been a second pre-trial conference held on June 8, 1970 but it did not involve the plaintiffs' claimed injuries.

131 F.2d 89, and Arkansas Power & Light Co. v. Liebe, 201 Ark. 292, 144 S. W.2d 29, both of which apply Arkansas law. But it is the District of Columbia law which controls here. In Martello v. Hawley, 112 U.S.App.D.C. 129, 132, 300 F.2d 721, 724 (1962), it was stated: " * * * The jury should not be allowed to know either the fact or the amount of any settlement; * * *." To plead and prove the settlement as a "set-off" in the jury case here would violate that rule. And in *Snowden* it was the motion to credit the settlement on Transit's judgment that the Court of Appeals directed should have been granted. A similar procedure has been approved in Illinois. Price v. Wabash Railroad Company, 30 Ill.App.2d 115, 174 N.E.2d 5 (1961).

In light of the circumstances here and the holding in *Snowden* this Court must hold that Hospital is entitled to credit on the verdict. In its November 10, 1971 opinion this Court considered the $270,000.00 paid in settlement by the innocent defendants Hakim and Associated Anesthesiologists as a gratuity, a collateral source payment made by volunteers. But as the Court of Appeals pointed out in *Snowden* only a minority of jurisdictions have so held and their views were unpersuasive to that Court.

█ The anomaly here is that Hakim and Associated Anesthesiologists, having made their settlements "under Damoclean pressure," may not be considered as volunteers, but at the same time, since they have been exonerated from any liability, they are not tort-feasors and, therefore, they can recover neither indemnification nor contribution from Hospital. 335 F.Supp. at 1231–1235. Thus, the rule in *Snowden* as applied here is a hard rule. Hospital, solely liable for the lifelong injury of the infant plaintiff, need only pay $25,000.00 on the judgment against it totalling $294,777.25.

In McKenna v. Austin, 77 U.S.App.D. C. 223, 228, 134 F.2d 659, 664 (1943), it was said an "injured person may [not] have more than full satisfaction" from the harm he suffered at the hands of others. To award him more would be to unjustly enrich him. But here Hospital, solely liable for infant plaintiff's brain damage, will be enriched by the sum of $269,777.25. Whether the rule in *Snowden* and its application here will, in the future, have an adverse effect on the law's policy favoring settlements remains to be seen.

This Court will enter an order crediting the $30,000.00 paid by Hakim and Associated Anesthesiologists in settlement with George W. Rose, Sr. on the $29,777.25 judgment on the verdict in favor of George W. Rose, Sr. against Hospital. And the Court's order will credit the $240,000.00 paid by Hakim and Associated Anesthesiologists in settlement with George W. Rose, Jr., on the $265,000.00 judgment on the verdict in favor of George W. Rose, Jr. against Hospital.

On this remand Hospital seeks a further credit of $7,964.70. As it has heretofore, Hospital claims that is the amount of the unpaid balance of the hospital bill incurred by plaintiffs for the care of infant plaintiff. In its November 10, 1971 opinion and order this Court rejected that claim. There is nothing in *Snowden* to give reason for altering that action. For the reasons stated on November 10, 1971, the claimed unpaid hospital bill will not be credited on the judgment on the verdict. 335 F.Supp. at 1237.